**HILLCREST FOODS, INC., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS UNION, AFL–CIO, LOCAL UNION NO. 576, Defendant.**

**No. 90–4028–R.**

United States District Court, D. Kansas.

Dec. 14, 1990.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case was originally filed in the District Court for Douglas County, Kansas. Defendant removed the case to this court. Plaintiff has brought this lawsuit seeking to set aside an arbitration award. Defendant has counterclaimed requesting an order to compel compliance with the arbitration award for back pay and interest on said back pay, and for attorney's fees and costs. This case is now before the court upon cross motions for summary judgment.

This case concerns the termination or layoff of three meat cutters by plaintiff following the sale of two grocery stores. Plaintiff continued to operate one grocery store following the sale. Meat cutters with less seniority were retained by plaintiff at the remaining store. Defendant filed a grievance arguing that the meat cutters with the most seniority should have been retained by plaintiff. The grievance went to arbitration where plaintiff argued that it had the right to terminate employees without regard to seniority. The arbitrator ruled in favor of defendant and directed that plaintiff reinstate the three meat cutters with full back pay, all contractual benefits, and no loss of seniority.

The Supreme Court has described and explained the limits on this court's power to review and modify the decision of an arbitrator of a grievance under a collective bargaining agreement.

> The courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate. *Id.*, at 597, 80 S.Ct. at 1361.

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346–1347, 4 L.Ed.2d 1403 (1960) (emphasis added; footnote omitted).

See also *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–650, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986).

The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government: The Labor Management Relations Act of 1947, 61 Stat. 154, 29 U.S.C. § 173(d), provides that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." See also *AT & T Technologies, supra,* at 650 [106 S.Ct. at 1419]. The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. ·Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it

disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. *Enterprise Wheel, supra,* [363 U.S.] at 599 [80 S.Ct. at 1362]. So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. If the. courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined. Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established. As the Court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 36–38, 108 S.Ct. 364, 370–371, 98 L.Ed.2d 286 (1987).

■ In this matter, the arbitrator made the following findings. Plaintiff bought four grocery stores in Lawrence, Kansas in June 1982. Defendant represented the meat department employees in the stores and entered a collective bargaining agreement with plaintiff. The three meat cutters in question in this case had seniority stemming from 1955, 1966 and 1969—the years of their original hire. In April 1987, plaintiff sold one of its stores. The meat

cutter who worked there was transferred to work at the other stores. In May 1987, plaintiff closed and tore down another store. A new, expanded store named "Checkers" was built by plaintiff in place of the old store. On March 4, 1989, plaintiff sold two stores, leaving it with only the new store. Plaintiff terminated the three meat cutters who worked at the two stores. Six meat cutters, five of whom had less seniority than all three meat cutters who were terminated, remained employed at the new store.

The arbitrator stated in his decision:

As is well known, in a dispute of this character, the language of the Agreement as a whole should be controlling in determining the intent of the applicable sections of the contract. Also important is the commonly accepted meaning of words found in the seniority and transfer provisions of the collective bargaining agreement, as further defined by the good faith and honesty of purpose standard.

The seniority rights are extensively spelled out in the Agreement by stating when an employee acquires seniority status, how an individual's seniority is to be related to fellow employees by groupings, how often seniority lists are to be published and the time limitations for inaccuracy complaints, how seniority is to be applied in the event of layoffs and rehiring, advance notice requirements for layoffs, and what actions will result in seniority being "broken."

*The record clearly demonstrated that employment in all the stores, beginning when there were four operated as Rusty's IGA and ending when there was but one (Checkers), was viewed by the Company and the Union as a single bargaining unit, under one contract with uniform wages, benefits, etc., and with a common seniority listing for all stores within respective groups. Moreover, the Company retained complete freedom, freely exercised, to transfer meat cutters from one store to another. There was no separate seniority posting for individual stores. There was no break in continuous service when an*

*employee was unilaterally assigned to a different store.*

Although extremely resourceful and imaginative, the argument that the Company had the sole right to determine whether the reduction in personnel upon the sale of two stores would be characterized as a termination or a layoff derives from faulty logic and misinterpretation of the Agreement. A cutback in the number of meat cutters needed for the continuing operations results in a layoff of the number equal to those for whom there is at the time no work available. Layoff provisions apply to a reduction in personnel before there are terminations of excess people. Such a situation was envisioned by the wording of ARTICLE XIX, Section 5, which says an employee's seniority will be broken if he fails to return within one week after being recalled, or if he has been out of employment by the Employer for a period of one year.

The contract calls for layoffs to be "in accordance with their established seniority within their respective seniority group" (if fitness and ability are comparable). In the termination letters, the Company did not deny the three grievants work at the Checkers store based on lack of fitness or ability although at the hearing—seven months later, for the first time—a belated and unpersuasive assertion was made concerning teamwork. Conceivably, the work at Checkers, with no waiting on customers and responding to speciality cut requests, could require less skill than at full-service stores.

As was properly pointed out by the Union, if the Company had the discretionary privilege of transferring individuals and then terminating those at a store to be sold or closed, this would make quite worthless the perceived security of seniority protection as agreed upon by the parties. It would be much the same as the employment-at-will concept, and would invite flagrant discrimination and favoritism. I do not believe that such is what was intended.

This is not to say that management is restricted in determining how many stores it will operate, if any, or the nature of such store or stores. Nor does it mandate the number of employees to be employed. None of these are issues in this dispute. The only issue is whether the company retained the appropriate employees as determined by the criteria in the contract. Obviously, it did not do so and, therefore, there was a violation of the collective bargaining agreement. (Emphasis added.)

Plaintiff acknowledges the seniority provisions of the collective bargaining agreement but contends that these provisions only govern layoff decisions—not decisions to terminate an employee because of the permanent ending of his job. Plaintiff asserts that the arbitrator's decision does not draw its essence from the collective bargaining agreement because: the collective bargaining agreement does not limit management's authority to terminate an employee when there is a permanent ending of the employee's job; nor does it require management to transfer an employee from a sold store to a remaining store, instead of severing the employee. In essence, plaintiff's position is that its powers to terminate, as opposed to lay off, an employee for lack of work, are unfettered by the collective bargaining agreement and that the contested actions in this case were terminations, not layoffs. By reading limitations upon plaintiff's authority into the collective bargaining agreement, the arbitrator, in plaintiff's view, was dispensing his own brand of industrial justice which was not based upon any ambiguity in the collective bargaining agreement or any common practice or usage within the company.

The court disagrees. The arbitrator was not limited by the strict terms of the collective bargaining agreement.

"... [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enter-

prise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement."

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579–80, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960) (quoting from Cox, Reflections Upon Labor Arbitration, 72 HARV.L.REV. 1482, 1498–99 (1959)). In *Warrior & Gulf,* the employer's contracting out of maintenance work was held arbitrable even though it violated no explicit provision of the collective bargaining agreement. In *Smith v. Kerrville Bus Co., Inc.,* 709 F.2d 914 (5th Cir.1983) and *Proctor & Gamble Mfg. Co. v. Independent Oil and Chemical Workers,* 386 F.Supp. 213 (D.Md.1974), the courts directed or approved the implication of just cause requirements for the discharge of employees covered by collective bargaining agreements. In *Smith,* the court stated:

[T]he provisions of a labor contract may be more readily expanded by implication than those of contracts memorializing other transactions. *Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.,* 172 F.Supp. 53 (D.Mass 1959). *See generally,* R. Gorman, Basic Text on Labor Law 540–41 (1976 ed.).

In instances where the language of a collective contract does not explicitly prohibit dismissal except for just cause, arbitrators typically infer such prohibitions from seniority clauses or grievance and

arbitration procedures. [Citations omitted.]
709 F.2d at 917.

Another case where the implication of a just cause requirement by an arbitrator was approved by the court is *United Food and Commercial Workers International v. Gold Star Sausage,* 487 F.Supp. 596 (D.Colo.1980). There, the company asserted that its right to fire at will was not expressly removed by the collective bargaining agreement and that the arbitrator modified the agreement by implying a just cause requirement from seniority provisions and provisions which restricted the right to fire employees who refused to cross a picket line. The court held that the arbitrator's decision did not stray from the essence of the collective bargaining agreement because:

> If the Gold Star Sausage Company had the power to fire employees at will, the seniority provisions and other benefits under the contract would be meaningless. Job security, a fundamental aspect of collective bargaining agreements, would be ·non-existent. By adhering to these principles, the arbitrator could reasonably infer that a just cause restriction was enmeshed in the fabric of the Agreement. He was not modifying the Agreement, nor was he exceeding his authority or asserting his own brand of industrial justice.

487 F.Supp. at 600.

In these cases, the court held that restrictions upon an employer's right to terminate employees could be implied from other job security provisions within the collective bargaining agreement. We believe the arbitrator in the instant case employed similar reasoning to hold that plaintiff could not terminate the employees in question without eviscerating the seniority provisions of the collective bargaining agreement.

Another case with somewhat similar facts is *Miller Brewing Co. v. Brewery Workers Local Union,* 739 F.2d 1159 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). There, the plaintiff beer company was in a multi-employer bargaining unit with Schlitz and Pabst. The collective bargaining agreements entitled regular employees laid off by *any* of the brewers to preference in hiring by any other brewery in the unit. Schlitz closed its brewery in Milwaukee, permanently laying off about 200 workers. Several months later, the plaintiff company recalled 39 *temporary* employees who had been laid off. A grievance was filed on behalf of the terminated Schlitz workers who argued that they were entitled to preference in rehiring over the plaintiff's temporary workers. The arbitrator held that the preference given to "laid off" workers in the collective bargaining agreement applied to permanently laid off workers and, therefore, the plaintiff company had to hire the Schlitz workers who had been terminated after the Schlitz plant was closed. The circuit court affirmed the arbitrator's decision stating:

> The arbitrator purported to be interpreting the language of the collective bargaining agreement in finding that the [preferential hiring] clause had been violated. His interpretation may very well have been incorrect, but that is none of our business. Our function is complete when we are satisfied that the arbitrator was not dispensing qadi justice but was construing the collective bargaining agreement. *He was doing that when he held that the Schlitz employees had been "laid off" within the meaning of the collective bargaining agreement, if not within the usual meaning of the term which connotes a temporary rather than permanent cessation of employment.*

739 F.2d at 1163 (emphasis supplied).

In the case at bar, plaintiff contends that the arbitrator exceeded his powers by applying the layoff provisions to employees who had been discharged with no expectation of being rehired because the store where they had worked had been sold. In the *Miller Brewing* case, the circuit court held that an arbitrator did *not* stray from the essence of the collective bargaining agreement when he applied layoff provisions to employees who had been dis-

charged with no expectation of being re-hired because the plant where they had worked had been closed.

In sum, it is not unreasonable to hold that employees who have lost their jobs because of a lack of work have been "laid off" even if there is no expectation of a return to work. See *Proctor & Gamble Mfg. Co. v. Independent Oil & Chemical Workers, supra,* 386 F.Supp. at 223 ("A layoff implies insufficient work to employ the number of workers presently on the payroll."). Workers may be permanently or temporarily "laid off". Plaintiff's argument that workers who are permanently laid off should be considered terminated, and that the collective bargaining agreement does not restrict plaintiff's discretion to terminate workers, is reasonable. But, plaintiff's burden in this case is to prove that the arbitrator was not "even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers International Union v. Misco, Inc., supra,* 484 U.S. at 38, 108 S.Ct. at 371. On the basis of the case law cited above, the court holds that plaintiff has failed to show that the arbitrator's decision lacks an arguable basis.

Plaintiff further argues that even if the arbitrator's decision regarding liability for violating the collective bargaining agreement is sustained, the remedy should be overturned because the collective bargaining agreement does not mandate layoffs according to seniority. The collective bargaining agreement *does* mandate layoffs according to seniority "if fitness and ability is comparable." The arbitrator found any arguments by plaintiff regarding fitness and ability to be "belated and unpersuasive." He also found that no statement regarding fitness or ability had been made in the termination letters. The court cannot disturb these factual findings. But, we find nothing in the arbitrator's decision which would preclude plaintiff and defendant from considering fitness and ability in making layoffs after the three meat cutters in question are reinstated with full back pay, all contractual benefits and no loss of seniority.

Finally, defendant's request for attorney's fees and expenses shall be denied. The arbitrator found that plaintiff was acting in good faith. This court also believes plaintiff's arguments are reasonable and made in good faith. Since there was justification for challenging the arbitrator's decision, the request for fees and expenses shall be denied. See *United Food & Commercial Workers International v. Gold Star Sausage, supra,* 487 F.Supp. at 600.

In conclusion, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted in part and denied in part. The court directs plaintiff to specifically perform the arbitration award in question in this case. Interest shall be awarded on all sums due and owing from the date of the arbitration award. But, the court shall not award attorney's fees and expenses against plaintiff.

IT IS SO ORDERED.