**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 145, Plaintiff-Appellee,**

v.

**MODERN AIR TRANSPORT, INC., Defendant-Appellant.**

No. 73–1345.

United States Court of Appeals, Fifth Circuit.

June 20, 1974.

———◆———

Richard R. Paige, Miami, Fla., James B. Rhoads, Robert J. Berghel, John Bacheller, Jr., Atlanta, Ga., for defendant-appellant.

Harold Mendelow, Miami, Fla., for plaintiff-appellee.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

Modern Air appeals from the district court's enforcement of an arbitrator's award in favor of the Union. Concluding that the court reached the right re-

sult, although through the wrong process, we affirm.

In 1971 Modern Air contracted out some modification and repair work to an outside agency rather than assigning the work to its own facilities. The Union contended that the contracting-out violated the collective bargaining agreement. They sought reinstatement and back pay for laid-off mechanics. Modern Air and the Union duly submitted the grievance to arbitration under the procedure provided in the collective bargaining agreement. The arbitrator found that Modern Air had breached the contracting-out provision of the agreement, and he ordered back pay and reinstatement for those employees improperly laid off.

In respect to contracting-out, the agreement provided:

(a) All work normally performed in the Company's Maintenance Shops and facilities and airport stations by the employees covered by this Agreement is recognized as coming within the jurisdiction of the International Brotherhood of Teamsters and is covered by this Agreement. When aircraft is placed in the active service of the Company, the periodic maintenance on such aircraft shall be within the scope of this Agreement.

The parties agree that the Company may:

1. Continue to contract out work heretofore customarily contracted out.[1]

.    .    .    .    .    .

Initial modification of newly acquired airplanes and jet engine repair work

were the subjects of the Union's grievances. On the evidence submitted to him, the arbitrator found that Modern Air had contracted out the bulk of the initial modification work but that the bargaining unit employees had performed some of that work. As to the jet engine repair, he found that the amount of contracting-out had varied over the years according to Modern Air's facilities and other contingencies but, although it had contracted out much of the engine repair, it also had performed a significant amount of the work in its own facilities.

This appeal focuses on the arbitrator's and the district court's interpretation of the term "customarily" in subparagraph 1. The arbitrator reasoned that:

.  .  .  I do not share the Company's apparent view that so long as there was substantial contracting out of certain work it may "continue to contract out [such] work" because of subparagraph 1 of subsection (a). To my mind, in the light of the basic thrust of subsection (a) to place "work normally performed" in the bargaining unit and in view of the limitations specified in subparagraph 4 of subsection (a) with regard to contract out "any work", there would appear to be and [sic] implication in the use of the words "customarily" in subparagraph 1 of subsection (a) that the authority specified therein relates to work that has been *exclusively* contracted out. Stated differently, it is my view that subparagraph 1 does not refer to work which has been both contracted out as well as performed by the bargaining unit.[2]

---

1. It further provided:
2. Return equipment, parts or assemblies to the manufacturer or to an approved agency for repair or replacement.
3. Purchase necessary parts, equipment or facilities.
4. Contract out any work when the Company's facilities or personnel are not sufficient or available, or where employees available do not have the experience and ability to satisfactorily perform the work required, provided

that the above does not result in a reduction in force of the employees covered by this Agreement. In which case representatives of the Company and Union will meet without delay and negotiate the proper provisions for the protection of employees' seniority and other property rights.

2. The arbitrator's reasoning proceeded:
In the instant case, while I am not at all convinced that bargaining unit employees

The district judge decided to "enforce the award for reasons completely different from those in the arbitrator's report: [W]here the arbitrator substituted the word 'exclusively' for the word 'customarily,' as it is used in subparagraph (a)1 . . ., it is completely improper." But the court went on to examine the facts in light of its own interpretation of the agreement and concluded that the arbitrator would have reached the same result using "customarily."

On appeal, Modern Air contends that, when the district court said the arbitrator could not interpret "customarily" to mean "exclusively," the court had found that the arbitrator exceeded his authority. Modern Air goes on to insist that, when the court reached that conclusion, then it should have proceeded no further but should have simply denied enforcement.

On the other hand, the Union contends that the court did not substitute its judgment for that of the arbitrator; rather, the court made the proper inquiry and determined by examining the entire clause that the arbitrator acted properly and within the scope of the agreement.[3]

At this point, we insert the law. The genesis, of course, was the trilogy.[4] The

have performed "initial" modification work to the extent that the Union here claims and, indeed, while I am equally convinced that the bulk of the "initial" modification work has not been performed by bargaining unit employees, although tasks performed in connection with such work may well have been performed by bargaining unit employees from time to time after aircraft have been placed in a revenue status, the fact remains that some "initial" modification work has been performed by bargaining unit employees and it cannot thus be concluded that such work has been "exclusively" contracted out. This is equally true for engine repair work involving hot section overhauls, as is plainly evident from the detailed recital above of what was done by whom with respect to various engine repair work. Accordingly, I do not regard subparagraph 1 of subsection (a) as determinative of the issue presented herein.

I find subparagraphs 2 and 3 of subsection (a) of Section 24 equally inapplicable in the instant situation. These provisions appear to have been included to make crystal clear the Company's right to resort, where necessary, to a manufacturer or to an approved agency for repairs or replacement of parts or assemblies, etc. but to conclude that in the instant situation the Company was authorized to contract out the work simply because "an approved agency" was involved would prove too much, in my opinion, since virtually all contracting out could then be authorized so long as "an approved agency" was involved and there would thus be little, if any, need to include subparagraphs 1 and 4 of subsection (a) of Section 24.

Essentially, authorization for the Company's contracting out for the work here being grieved must be found in subparagraph 4. As I read that provision the Parties intended to provide substantial flexibility to the Company to obtain the performance of all work required to keep its equipment operative. However, the Parties equally and plainly intended that the Company's right to contract out "any work" would be circumscribed to the extent that if a reduction in force of bargaining unit employees would occur then the Company and Union would meet and protect employees' seniority and other property rights. Thus, the Company could contract out work where its facilities or personnel are not sufficient or available or where employees able to perform the required work are not sufficiently experienced or skilled to perform the required work, so long as the Company and Union meet to protect employees in the event a reduction of force then occurs.

To my mind, the limitations specified in subparagraph 4 on the Company's right to contract out "any work" places a burden not upon the Union, as the Company here argues, but rather on the Company itself to demonstrate that its facilities or personnel are not sufficient or available etc. Stated differently, the Company has the right to contract out under given circumstances and it thus behooves the Company to demonstrate the existence of such circumstances when it seeks to exercise its right.

3. The parties do not dispute that the grievance was properly arbitrable.

4. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Court there delineated the limitations on the arbitrator:

> . . . [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).

We have expressed the limitation in terms of "foundation in reason or fact":

> In the arbitration context, an award "without foundation in reason or fact" is equated with an award that exceeds the authority or jurisdiction on the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction. The requirement that the result of arbitration have "foundation in reason or fact" means that the award must, in some logical way, be derived from the wording or purpose of the contract. Brotherhood of R R Trainmen v. Central of Georgia Ry. Co., 415 F.2d 403, 411–412 (5th Cir. 1969).

Additionally, in Safeway Stores v. American Bakery Workers Union Local 111, 5 Cir., 390 F.2d 79, 81–82, we said:

> "[I]f the award is arbitrary, capricious or not adequately grounded in the basic collective bargaining contract, it will not be enforced by the courts." . . . On its face the award should ordinarily reveal that it finds its source in the contract and those circumstances out of which comes the "common law of the shop."

See, Dallas Typographical Union v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967).

A concomitant narrow standard restricts judicial review of the arbitrator's broad authority:

> . . . the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. Enterprise, supra, 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429.

As we said in Safeway Stores, supra at 81:

> . . . [W]e must be vigilant that we are not slipping off into that habit, easy for Judges, of "deciding the merits in the guise of adjudicating the court-reserved issue of the scope . . . of the agreement to arbitrate."

The court must not "[resume] its traditional role of assaying the judicial acceptability of the award had it been a court judgment." Safeway Stores, supra at 83.

■ Although the district court's action here was ambiguous, we conclude that, by finding that the arbitrator could not interpret "customarily" to mean "exclusively," the court found that the arbitrator had exceeded his authority. Then, when the district court went on to interpret the contract, the court iself improperly "[resumed] its tradi-

tional role of assaying the judicial acceptability of the award." The proper course for the district court would have been to deny enforcement upon the finding that the arbitrator manifested an "infidelity to his obligation." *Enterprise, supra.*

That conclusion, however, does not end our inquiry. The district court, in deciding that the arbitrator could not equate "customarily" with "exclusively," mistook fundamental authority for contract interpretation—the arbitrator's proper function.

Analyzing the arbitrator's reasoning, he performed the traditional function of one delegated to resolve contractual disputes. He interpreted and gave meaning (exclusively) to an ambiguous (customarily) contract term in light of the other provisions and purposes of the contract. His award was well founded in the "essence" of, and more than "rationally inferable" from the letter and purpose of, the collective bargaining agreement. United Steelworkers v. United States Gypsum Co., 492 F.2d 713 (5th Cir. 1974); Amalgamated Meat Cutters, Local 540 v. Neuhoff Bros. Packers, Inc., 481 F.2d 817 (5th Cir. 1973). Neither the district court nor we have any "business overruling him because [our] interpretation of the contract is different from his." *Enterprise, supra.*

We find ourselves thus in agreement with the district court's result but in disagreement with his method. In effect, we are directly approving the arbitrator's award. As this is not unprecedented, when it fully resolves the issue between the parties in a protracted dispute, San Antonio Newspaper Guild, Local 25 v. San Antonio Light Division, 481 F.2d 821 (5th Cir. 1973),[5] we affirm the district court's order.

Affirmed.

5. Additionally, our action does not contravene Judge Godbold's dissent in that case because here the arbitrator has reached and decided the merits of an issue undisputedly within his authority.