**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**WESTERN ELECTRIC COMPANY, INC., Defendant.**

Civ. A. No. C 75–403 A.

United States District Court,
N. D. Georgia,
Atlanta Division.
Aug. 14, 1975.

21. The desires of litigants can hardly be a firm base upon which to construct a code of professional responsibility.

Patrick M. Scanlon, Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., Charles V. Koons, Kane & Koons, Washington, D.C., for plaintiff.

Duane C. Aldrich, Richard R. Boisseau, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., James D. Cutlip, Western Electric Co., Inc., New York City, for defendant.

## ORDER

JAMES C. HILL, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court has jurisdiction under Section 301 of the Labor-Management Relations Act (the "Act"), as amended, 29 U.S.C. § 185, to entertain suits for the enforcement of arbitration awards.

The material facts are not in dispute. Plaintiff, Communications Workers of America, AFL–CIO, (the "Union") and defendant, Western Electric Company, Inc., (the "Company") were parties to a collective bargaining agreement, dated July 18, 1971, (the "Agreement") providing for the arbitration of differences arising between the parties with respect to the interpretation of the agreement or the performance of any obligation thereunder.

At all times relevant to this action, the Company had in force an "Interim Status" policy which provided that an employee who had been charged with a crime could be placed on inactive status by management until his position and relationship to the Company were clarified. On January 22, 1973, an employee of the Company, and member of the Union, was arrested by agents of the Federal Bureau of Investigation and the employee was placed on Interim Status by the Company. On March 28, 1973, the

complaints were dismissed against the employee by a United States Magistrate and on April 2, 1973, the employee was reinstated without back pay for the time he was on Interim Status.

A grievance was filed challenging this denial of back pay. While no provisions in the agreement dealt expressly with suspensions pursuant to the Interim Status policy, on September 27, 1974, the parties agreed to submit the unresolved grievance to arbitration under Article 22 of the agreement. Article 22 provides, *inter alia,* that cases involving the suspension of an employee for disciplinary reasons may be referred to arbitration but that the authority of the arbitrator shall be limited to a determination of whether or not the Company acted unreasonably in suspending the employee. If the arbitrator decides that the Company did act unreasonably, the employee is to be offered reinstatement and back pay for time lost.[1]

However, the parties were unable to agree upon the issue or issues which were properly before the arbitrator. It was agreed that each party would state its position in its brief and that the arbitrator would state the issue or issues in his decision. The Union stated two issues: 1) Did the Company act unreasonably in placing the employee on Interim Status; if so, what is the proper remedy? 2) Did the Company act unreasonably in reinstating the employee without back pay; if so, what is the proper remedy? The Company took the position that only the first issue was properly before the arbitrator and that the second issue was beyond the arbitrator's authority under the terms of Article 22.

The arbitrator agreed with the Union. In the course of his opinion, he stated:

Thus, if the only question presented was whether the Company can keep an employee off the job pending resolution of criminal charges against him, the answer, both on principle and precedent, clearly seems to be that such action is not unreasonable.

The more difficult question is whether, in the case of an employee who is reinstated after the charges are dropped or he is acquitted, the Company may deny the employee back pay for the period of the suspension. To say that a suspension, by definition, means a period of no pay is semantic question-begging. In a disciplinary suspension, denial of pay is the penalty. But an Interim Status suspension is not disciplinary as the Company has successfully maintained.

. . . If the charges are dismissed or he is acquitted, it seems manifestly unjust, from the employee's point of view, that he should nevertheless be penalized by the loss of his wages after exoneration.

. . . The question is which of two innocent parties should bear the loss. Since the Company's action occasioned the loss, it seems fair that the Company bear the burden. If the Company does not wish to assume the business risk of continuing the

---

1. Paragraphs 3 and 4 of Article 22 provide:

If settlement is not reached in the grievance procedure, as provided in Paragraph 2 above, such dispute may be referred to arbitration in accordance with Article 8 of this contract, provided the Employee involved has a Term of Employment of more than six (6) months. However, in the case of any dispute referred to arbitration as provided herein, the authority of the Arbitrator shall be further limited to a determination of whether or not the Company has acted unreasonably in suspending, "Relieving," "Dropping" or "Discharging" such Employee or Employees.

Should the Arbitrator decide that the action of the Company was unreasonably taken the Employee shall be offered reinstatement if he or she has not been previously reinstated, and, if reinstated, shall, subject to the provisions of Paragraphs 5 and 6 below, be paid at his or her standard hourly rate for time lost within his or her Standard Weekly Work Schedule less any amount paid to or received by the Employee as wages in other provisions of law during the period of suspension or subsequent to the date of termination.

charged employee on the job, it should be prepared to pay the cost if the employee is subsequently exonerated.

. . . The Company does not act unreasonably when, for legitimate preventive reasons, it suspends an employee charged with crime, but it does act unreasonably if it automatically denies all back pay to a suspended employee who is subsequently exonerated and reinstated.

On the facts of this case, I hold that the Company did not act unreasonably in suspending [the employee] on January 23, 1973. But, since the denial of back pay when [the employee] was reinstated on April 2, 1973 was pursuant to a Company policy which automatically denies all back pay for the full period of an Interim Status suspension, the Company did act unreasonably when it denied [the employee] back pay for the period of the suspension.

An award having been made by the arbitrator and the Company having failed to comply, the Union now seeks enforcement of the award in this Court. In addition the Union has requested that the Court award it the costs and attorneys' fees incurred in prosecuting this action. The Company argues that the arbitrator exceeded his authority in awarding back pay, and that, therefore, this Court should decline to enforce the award and grant its motion for summary judgment.

■ On motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, the role of the Court is to decide if, in the absence of any genuine issue of material fact, the movant is entitled to judgment as a matter of law. 6 Moore's Federal Practice, ¶ 56.15[1.–0]. On the basis of the pleadings and exhibits submitted the Court finds that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.

■■ In the case of Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), the Supreme Court decided that Section 301(a) was substantive, and the law to be applied pursuant to it is federal law which must be fashioned from the policies of our national labor laws. There is no question as to this Court's jurisdiction under Section 301(a) to enforce arbitration awards under a collective bargaining agreement, or that a substantive right exists on the part of a party to a collective bargaining agreement to enforce the arbitration award. Machinists, District 145 v. Modern Air Transport, Inc., 495 F.2d 1241 (5th Cir. 1974); New Orleans S. S. Association v. I. L. A., Local #1418, 423 F.2d 38 (5th Cir. 1970); Safeway Stores v. American Bakery Workers, Local 111, 390 F.2d 79 (5th Cir. 1968); Georgia Power Company v. Local 84, I.B.E.W., Civil Action No. 17292 (N.D.Ga., April 26, 1973).

The proper role of this Court in the enforcement of collective bargaining agreements and the enforcement of arbitration awards was announced in the so-called "Steelworkers Trilogy": United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). As stated in the Enterprise Wheel & Car case, supra, in upholding the arbitrator's authority to render an award:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. . . .

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. *Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.* He may of course look for guidance from many sources, yet *his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation,* courts have no choice but to refuse enforcement of the award. (363 U.S. at 596–597, 80 S.Ct. at 1360) (emphasis added)

■ In the case *sub judice,* since the collective bargaining agreement did not deal expressly with Interim Status Suspensions, the parties agreed to apply the terms of Article 22 of the agreement. At the hearing, however, the parties were unable to agree upon the issue or issues which were properly before the arbitrator. It was agreed that each party would state its position in its brief and that the arbitrator would state the issue or issues in his decision. In other words the arbitrator was commissioned by the parties "to interpret and apply the collective bargaining agreement" and only if the "arbitrator's words manifest an infidelity to this obligation" would this Court be justified in refusing to enforce the award.

The Court must then look to the words of the arbitrator and determine if his award "draws its essence from the collective bargaining agreement." *Enterprise Corp., supra,* at 597, 80 S.Ct. at 1361. It has been held that

". . . a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award." *International U. of Dist. 50, U.M.W. v. Bowman Transp., Inc.,* 421 F.2d 934, 936 (5th Cir. 1970), quoting with approval *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969).

■ The parties in this case agreed to submit this employee's grievance to arbitration under the terms of Article 22. They also agreed to allow the arbitrator to interpret and apply the terms of this provision. The Court is fortunate in this case to have a complete and unambiguous opinion by the arbitrator. However, the Court is of the opinion that the manifest words of the arbitrator clearly show that he did not confine himself to interpretation and application of the collective bargaining agreement, but instead took it upon himself to dispense his own brand of industrial justice. Therefore, enforcement of the award must be denied.

Under the unambiguous terms of Article 22 of the agreement, the authority of the arbitrator was expressly limited to a determination of the reasonableness of the suspension. Indeed, the arbitrator himself recognized this fact in his opinion where he states:

"In evaluating the argument it must be remembered that Article 22 was written to deal with disciplinary suspensions and not preventive suspensions. Since by definition a disciplinary suspension is without pay, it is possible to focus solely on the reasonableness of the suspension. *Decision on the suspension automatically decides the back pay issue* and therefore it is not necessary to consider back pay separately." (at p. 6) (emphasis added)

A considerable portion of the arbitrator's opinion is spent distinguishing the disciplinary suspension for which Article 22 was specifically designed from the Interim Status or "preventive" suspension. Thus, in a disciplinary suspen-

sion, denial of back pay was thought to be an appropriate penalty whereas in an Interim Status suspension the arbitrator thought that no penalty was justified. Therefore, the arbitrator concluded:

"Manifestly, denial of wages to the suspended employee works a very real hardship. His normal source of income is cut off at a time when the cost of his legal defense imposes an extra economic demand upon him. The deprivation continues indefinitely until the legal process produces a decision of some kind. If the charges are dismissed or he is acquitted, it seems manifestly unjust, from the employee's point of view, that he should nevertheless be penalized by the loss of his wages after exoneration.

Neither at the hearing nor in its brief has the Company offered any justification for denying back pay to the reinstated employee. . . .

. . . The question is which of two innocent parties should bear the loss. Since the Company's action occasioned the loss, it seems fair that the Company bear the burden." (at p. 3–4).

With all due respect this Court is of the opinion that the question is *not* "which of two innocent parties should bear the loss." The question is the interpretation and application of the collective bargaining agreement. While it is true that Article 22 by its terms was not designed to apply to the suspension in this case, the parties *agreed* that it was to apply.

■■■■ The arbitrator was of the opinion that it would be "manifestly unjust" to deny an exonerated employee back pay. However much this Court might sympathize with this feeling, the arbitrator "does not sit to dispense his own brand of industrial justice." *Enterprise Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361. The arbitrator's obligation is to bring his informed judgment to bear in order to reach a fair solution of a problem but confined to interpretation and application of the collective

bargaining agreement. Infidelity to this obligation leaves this Court no choice but to refuse enforcement of the award. Just as this Court may not review the merits of an arbitration award, the arbitrator may not substitute his concept of what is fair or which of two innocent parties should bear the loss.

■■■■ The parties agreed to submit the grievance of this employee to arbitration pursuant to Article 22 of the collective bargaining agreement. That Article unambiguously limits the authority of the arbitrator "to a determination of whether or not the Company has acted unreasonably in suspending . . . such employee or employees." This limitation of the arbitrator's authority is undoubtedly valid. *See, e. g., United States of America v. Warrior and Gulf Navigation Company, supra; John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *International U. of Op. Eng., Local No. 450 v. Mid-Valley, Inc.,* 347 F.Supp. 1104 (S.D.Tex.1972). Where the provisions of a collective bargaining agreement are not in clear, plain, exact and unambiguous terms, an arbitrator has wide latitude in interpreting the agreement. *International Union, Etc. v. White Motor Corp.,* 505 F.2d 1193 (8th Cir. 1974); *Timken Company v. United Steelworkers of America,* 492 F.2d 1178 (6th Cir. 1974). However, in the instant case the provisions of the agreement could hardly be more clear.

■■■■ The recent decision in *Local 369, Bakery & Confectionery Workers International Union of America, AFL–CIO v. Cotton Baking Company, Inc.,* 514 F.2d 1235 (5th Cir. 1975), does not call for a different result in this case. There the agreement provided that any grievance or dispute was to be submitted to an arbitrator for the final and binding arbitration thereof. In other words there was no attempt to limit his authority. As there stated:

"Having found a contract violation, he must fashion a remedial order to bring the parties' actions in conformi-

ty with the contract and make reparation for past infringements. A collective bargaining agreement may not specify the relief required for every conceivable contractual violation, so the arbitrator must often rely on his own experience and expertise in formulating an appropriate remedy."

The short answer in the case *sub judice* is that the arbitrator found no contract violation. "I hold that the Company did not act unreasonably in suspending [the employee] on January 23, 1973." Yet the arbitrator went on to award an appropriate remedy. While a collective bargaining agreement may not specify the relief required for every conceivable contract violation, the arbitrator was not free to ignore the express terms of the agreement and award back pay on the basis that he finds a Company policy unreasonable, unfair or manifestly unjust.

The arbitrator recognized that normally under Article 22 the back pay issue was automatically decided by paragraph 4 once the question of the reasonableness of the suspension was decided.[2] Thus, he stated that Article 22 was only being used as a "contractual reference point by agreement of the parties." The parties agreed and intended to submit the grievance of the employee pursuant to the terms of Article 22. If the parties had intended to submit the grievance to the arbitrator for a decision as he saw fit, their method of doing so, i.

e., pursuant to the terms of Article 22, fails to manifest itself.

Finally, the arbitrator felt that to accept the Company argument would in effect mean that there would be no way in which the Union could raise the issue of back pay under the contract. Implicit in such a statement is the assumption that every issue must be subject to arbitration. Arbitration is a matter of agreement and an employer and union are required to submit to arbitration only those matters which they have agreed to submit. *See,* "Steelworkers Trilogy", *supra.* Of course, our national labor policy strongly favors arbitration.

The Company in this case first took the position that the grievance with regard to an Interim Status suspension was not arbitrable under the agreement at all. At some point the parties agreed that the grievance would be arbitrated under Article 22. Having thus agreed, it is of no consequence that the back pay issue cannot be decided separately from the reasonableness of the suspension under Article 22. The answer is that the issue could be separately decided if the parties agree that it is to be so decided. Thus, the issue presented herein would seem to be a logical topic for discussion when the parties enter into negotiations with regard to a new collective bargaining agreement. The Union did not have to agree to submit the grievance under

---

2. The Union argues that the arbitrator expressly found that the parties agreed to use Article 22 merely as a "contractual reference point" and that that finding is binding on this Court absent fraud, collusion or bad faith. The arbitrator also found that "the parties have agreed that Article 22 is applicable to such [Interim Status] suspensions." Insofar as these two statements appear inconsistent, the parties herein have stipulated that the "terms of Article 22" were to apply. The Court does not believe that a finding by the arbitrator that the parties intended to use Article 22 merely as a "contractual reference point" under the facts of this case can be used to support the authority of the arbitrator to go beyond the express terms of Article 22. It is the authority of the arbitrator which this Court is empowered to re-

view, not the merits of his factual determinations.

Also, whatever the merits of the arbitrator's "contractual reference point" analysis, it is clear that he felt his decision appropriate under the terms of Article 22. He stated, "Purely as a matter of textual analysis, I think Article 22 permits a challenge on the back pay issue." The arbitrator then proceeds to find the Company "policy" of never awarding back pay "unreasonable" and attempts to transform the suspension which he has already found reasonable into an unreasonable one. This *ex post facto* line of argument may not be used to avoid the express, unambiguous limitation of authority under which the arbitrator was commissioned.

Article 22 and the Company did not have to agree to arbitrate the grievance at all. The compromise was that the Company agreed to arbitrate, and the Union agreed to arbitrate under Article 22. The arbitrator thus exceeded his authority in rendering an award outside of Article 22.

■ The Union also contends that the Company in effect has waived its right to contest the award of the arbitrator by agreeing to allow the arbitrator to decide the proper issues before him. Thus, by agreeing to allow the arbitrator to decide the issues properly before him the Company should not now be allowed to contest his decision that the issue of back pay was before him. This argument must be rejected.

When the case came before the arbitrator, the parties were unable to agree as to the issues to be submitted. They did agree that the issue of the reasonableness of the suspension was properly before the arbitrator. In addition, the Union argued that the issue of back pay was before the arbitrator and the Company disagreed. So, rather than terminate the hearing, the parties agreed that each side would make its arguments to the arbitrator. To accept the Union's argument would mean that anytime one party thought that an issue was before the arbitrator then the opposing party either must refuse to arbitrate or be bound by the arbitrator's decision should he agree with the party submitting the issue. This Hobson's choice would certainly discourage arbitration rather than promote it. The Company was obviously challenging the authority of the arbitrator to decide the back pay issue. The Company did agree, however, to allow the arbitrator in the first instance to decide the scope of his authority. It did not agree to give him additional authority by this action to decide issues over which he otherwise did not already have authority. This Court concludes that the arbitrator clearly did exceed his authority when he concluded that he could decide the back pay issue. This Court is not deciding the merits of the back pay issue nor the facts. The collective bargaining agreement clearly limits the arbitrator's authority and his award clearly exceeded that authority. The Union is not entitled to enforcement of the award. Accordingly, judgment will be entered for the defendant.