UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL, AFL–CIO, LOCAL UNION NO. 634, an Unincorporated Association, Plaintiff,

v.

GOLD STAR SAUSAGE CO., a Colorado Corporation, Defendant.

Civ. A. No. 80–A–64.

United States District Court,
D. Colorado.

April 9, 1980.

Philip Hornbein, Jr., Denver, Colo., for plaintiff.

Martin Semple, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This matter is before me on the parties' cross motions for summary judgment in an action to obtain specific performance of an arbitration award in favor of plaintiff, the collective bargaining agent for the employees of defendant Gold Star Sausage Company. Jurisdiction exists under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. There being no genuine issue of material fact, the matter is ripe for disposition. Rule 56, Fed.R.Civ.P.

### I

The Company terminated the employment of Betty Flores Hernandez (Grievant) for violation of the Company's "no fighting" rule. Under this publicized, unwritten rule, *any* person, whether he or she be the aggressor or defender, who becomes involved in a fight on Company premises is fired. Grievant was involved in a fight with another employee on May 10, 1979, and both employees were fired. The plaintiff Union contested the termination of the Grievant, but the parties were unable to resolve the dispute, so it was submitted to arbitration pursuant to the parties' collective bargaining agreement (Agreement).[1] The Union's position was that the Grievant should be reinstated because she was not fired for just cause. The Company's position was that the Agreement contained no express term providing for the termination of employees for just cause only, therefore the Company had retained its right to fire at will and could rightfully fire the Grievant for violating the no fighting rule.

The Arbitrator found that the Grievant was not the aggressor in the fighting incident, and that the application of the no fighting rule resulted in her being termi-

nated without just cause. In making this determination, the arbitrator ruled that a just cause provision must be implied as part of the Agreement. He relied on the *Steelworkers Trilogy: United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); certain reported labor arbitration decisions, and Articles VIII and XXVI of the Agreement. The arbitrator ordered reinstatement without loss of seniority or other contractual benefits, and back pay (reduced by interim earnings and unemployment compensation).

The Company now refuses to comply with the award on the grounds that the award does not draw its essence from the Agreement and that the arbitrator exceeded his authority by implying a just cause provision. Such an action, contends the Company, modifies the Agreement and thus violates an express contractual limitation of the arbitrator's power.

The pertinent sections of the Agreement are as follows:

### ARTICLE II

#### RIGHTS OF MANAGEMENT

Section 1. The Company retains the right of managing the plant, to direct the working forces and to make necessary rules and regulations for the conduct of the business, provided that the rules and regulations are not in conflict with the terms of the Agreement in any way.

### ARTICLE VIII

#### SENIORITY

Section 1. The Company and the Union accept the principle of seniority and qual-

---

1. The Agreement provided for a three-member Board of Arbitration, but the parties waived that requirement and chose one person to serve as the sole arbitrator.

ifications in lay-offs, rehiring, transfers and promotions and agree that length of continuous service in the bargaining unit shall govern. When length of service is equal, qualifications shall govern.

## ARTICLE XVI

### ARBITRATION

In the event a dispute, misunderstanding, or controversy shall arise between the parties hereto, during the life of this Agreement, respecting the interpretation, construction, intent, or meaning of this Agreement which cannot be satisfactorily adjusted between the parties, then, and in that event, there shall be no lockout, strike or stoppage of work, but the Company and the Union shall each select an arbiter within forty-eight (48) hours, and the two (2) thus chosen shall select a third (3rd), and three (3) thus chosen shall constitute a Board of Arbitration to hear and determine the matter in dispute or controversy and a finding or award of said Board shall be final and conclusive upon the parties hereto.

.    .    .    .    .

The Board of Arbitration when thus constituted shall have all the rights, powers, and duties herein given, granted, and imposed upon a Board of Arbitration. Such an award shall not affect, change, alter, or modify any of the terms and conditions set forth in this Agreement.

## ARTICLE XXV

### NO DISCRIMINATION

No employee shall be discharged or threatened for refusing to cross or work behind any primary picket line established by any labor organization at the Employer's premises, nor shall the Union be deemed to be in violation of this Agreement if its members choose to honor such picket line.    .    .    .

## II

The judicial standards for review of arbitration awards forbid me from reviewing the merits of the award, so the issue presented is whether the implication of a just cause provision draws its essence from the Agreement and is within the scope of the arbitrator's authority.

■    It is well settled that an arbitrator's decision will be accorded great deference so long as he limits himself to interpreting and applying the Agreement. *International Brotherhood of Electrical Workers, Local Union Nos. 12, 111, 113, 969 v. Professional Hole Drilling, Inc.*, 574 F.2d 497 (10th Cir. 1978); *Campo Machining Co. v. Local Lodge No. 1926 of the International Association of the Machinists & Aerospace Workers*, 536 F.3d 330 (10th Cir. 1976). So long as the essence of the award is rooted in the Agreement, the award is final and not reviewable. *Campo Machining Co., supra.* See also *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). With a broad arbitration provision, a court should not interfere with the decision "unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation." *Professional Hole Drilling, Inc., supra* at 503. The award must be vacated if it is without foundation in reason or fact. *Boise Cascade Corp. v. United Steelworkers of America, AFL–CIO, Local Union No. 7001*, 588 F.2d 127 (5th Cir. 1979). See also *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir. 1977). Applying these principles to the case at bar, I conclude that the award must be enforced.

## III

■ There are very few reported court decisions concerning an arbitrator implying a just cause provision and a court's power to vacate such an award. In *Monaghan v. Central Vermont Railway, Inc.*, 404 F.Supp. 683 (D.Mass.1975), the court refused to set aside an award in which the National Railroad Adjustment Board interpreted an agreement to mean that an employee could not be discharged at will. The employer argued unsuccessfully that since the agree-

ment did not state that the employer could not discharge at will, the Board had, in effect, altered the agreement. *See also Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.*, 172 F.Supp. 53, 56–58 (D.Mass. 1959).[2]

In cases where the judiciary is interpreting the contract and not merely passing upon the validity of an arbitration award, naturally the language of the contract and the practices of the parties have been controlling. In *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769 (5th Cir. 1977), the Fifth Circuit upheld a district court's conclusion that a just cause limitation upon the employer's right to discharge should be inferred as a basic part of the agreement. 558 F.2d at 771, n.3. That determination, however, was hinged upon a hiring hall arrangement used in the trade. The court in *Young v. Southwestern Bell Telephone Co.*, 309 F.Supp. 475 (E.D.Ark.1969), refused to imply a covenant not to discharge except for cause because the contract dealt directly with terminations in drawing distinctions between employees based on length of service. Senior employees expressly were given a right to arbitrate, while newer ones were not, thus the court believed the employer had reserved the ultimate right to discharge new employees.

In implying the just cause restriction in the instant case, the arbitrator pointed to two clauses in the Agreement, namely, Article VIII: "[t]he Company and the Union accept the principle of seniority and qualifi-

cations in layoffs, rehiring, transfers and promotions and agree that length of continuous service in the bargaining unit shall govern," and Article XXVI: "[n]o employee shall be discharged or threatened for refusing to cross or work behind any primary picket line established by any labor organization at the Employer's premises . . ." There is no direct reference to the Company's power to discharge with or without just cause, but the Agreement does provide for a measure of job security insofar as principles of seniority govern lay-offs, rehiring, etc. Additionally, the Company cannot fire employees for refusing to cross picket lines, thus the parties expressly agreed that certain conduct would not be cause for discharge. Therefore it is possible to infer that the parties contemplated that any discharge would be for cause.[3]

Defendant's contention is that it has a common law right to fire at will, so long as no contractual or statutory provision is violated, and because the Agreement does not expressly remove that right, the company retains it.[4] The Company then argues that the limitation of that right by the arbitrator modifies the Agreement, an action beyond the arbitrator's authority.[5] I disagree.

The Supreme Court has recognized the employer's termination right to which defendant refers. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 at 583, 80 S.Ct. 1347 at 1353, 4 L.Ed.2d 1409 (1960) and *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320

---

**2.** Defendant's reliance on *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir. 1977) is misplaced. There the Tenth Circuit agreed with the trial court that the arbitrator had exceeded his authority in failing to sustain a discharge where the contract specified that the conduct of the employee was grounds for discharge. The arbitrator had "rewritten" the contract to provide for progressive discipline where the contract expressly made a certain act just cause for discharge. The arbitrator in the case at bar is not modifying express terms of the contract.

**3.** The arbitrator in the case at bar applied this rationale in his decision, and referred to *RLC & Son Trucking, Inc.*, 70 LA 600 (Harkless 1978), an arbitration decision involving a contract

with terms similar to Articles VIII and XXVI above.

**4.** If the Company does have an unfettered right to fire, then discharges would never be an arbitrable dispute, unless the Union could claim the discharge was for Union activity. The exclusion of grievances from arbitration in the absence of express provisions therefor has been frowned upon by the Supreme Court. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960).

**5.** The Agreement states "an award shall not affect, change, alter, or modify any of the terms and conditions set forth in this Agreement."

at 324, 92 S.Ct. 1562 at 1565, 32 L.Ed.2d 95 (1972). But in both those cases, the Court also recognized that a collective bargaining agreement can restrict that right. Thus the question for the arbitrator here was whether the Agreement did in fact limit the Company's right to fire at will.

The Supreme Court, in the *Warrior & Gulf case,* said that the collective bargaining agreement covers the whole employment relationship and "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."[6] 363 U.S. at 578, 80 S.Ct. at 1351. Furthermore, the "arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop [7]—is equally a part of the collective bargaining agreement although not expressed in it." 363 U.S. at 581–82, 80 S.Ct. at 1352.

Consistent with the approach of *Warrior & Gulf* is the view expressed by Chief Judge Murrah in *Local 1912, International Association of Machinists v. United States Potash Co.,* 270 F.2d 496 (10th Cir. 1959) *cert. denied* 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed.2d 1728 (1960). In dealing with the question of arbitrability, he said that implied covenants of good faith and fair dealings were the lifeblood of collective bargaining agreements, and that neither party should act so as to deprive the other of the fruits of the contract. It is for the courts "to put meat on the skeleton rather than tear the flesh from the bones." 270 F.2d at 498.

If the Gold Star Sausage Company had the power to fire employees at will, the seniority provisions and other benefits under the contract would be meaningless. Job security, a fundamental aspect of collective bargaining agreements, would be non-existent. By adhering to these principles, the arbitrator could reasonably infer that a just cause restriction was enmeshed in the fabric of the Agreement.[8] He was not modifying the Agreement, nor was he exceeding his authority or asserting his own brand of industrial justice.

■ Since I cannot say with positive assurance that the award does not draw its essence from the Agreement, or that the arbitrator's interpretation is without foundation in reason or fact, plaintiff is entitled to a decree of specific performance. Plaintiff's prayer for attorney's fees is denied, because the Company was not acting in bad faith and was not without justification in challenging the award. *Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523,* 597 F.2d 227 (10th Cir. 1979). Accordingly, it is

ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, granted. It is further

ORDERED that defendant shall comply with the arbitration award rendered in this matter. It is further

ORDERED that defendant's motion for summary judgment be and the same hereby is, denied. It is further

ORDERED that defendant's counterclaim be, and the same hereby is, dismissed.

The Clerk shall enter Judgment in favor of plaintiff, and each party shall pay its own costs.

---

6. I find it quite extraordinary that the parties failed to express the grounds for a discharge. However, the inference to be drawn therefrom is within the arbitrator's ambit of authority.

7. I do not believe the Court restricted the "industrial common law" to the peculiar practices of each industry or shop. Rather, the notion of job security is an important purpose of a collective bargaining agreement, and therefore could be considered in interpreting each agreement.

8. Defendant argues that it has the express right under Article II to make rules not in conflict with the *terms* of the Agreement, and because "just cause" is not a term, the no fighting rule must stand. But since the arbitrator has interpreted the Agreement to include a just cause restriction, "just cause" is a term and rules conflicting therewith must fall.