621 F.2d 81
 104 L.R.R.M. (BNA) 2378, 88 Lab.Cas. P 12,057
 JOHNSON BRONZE COMPANY,
v.
INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO, and
Local Union No. 69, International Union of United
Automobile, Aerospace and Agricultural Implement Workers of
America, AFL-CIO, Appellants.
 No. 79-2269.
 United States Court of Appeals,
Third Circuit.
 Argued March 19, 1980.
Decided May 19, 1980.
 
 Daniel W. Cooper (argued), Cooper, Lepore & Dreeland, Pittsburgh, Pa., for appellants.
 C. Arthur Dimond (argued), Louis A. Prosperi, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.
 Before SEITZ, Chief Judge, and WEIS and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court which vacated and set aside an arbitrator's award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Because we conclude that the district court exceeded the permissible scope of its review of the arbitrator's award, we will reverse.
 
 I.
 
 2
 Johnson Bronze Company (the Company) manufactures bushings and bearings at its plant in New Castle, Pennsylvania. The International Union of United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Union No. 69 (the Union) represent the production and maintenance employees at the plant. The Company and the Union were parties to a collective bargaining agreement effective from January 25, 1976 through December 31, 1979.
 
 
 3
 On February 27, 1978, Betty Thompson, an employee of the Company serving as a Shop Booth Clerk, was granted sick leave without pay in order to obtain medical treatment. The sick leave was extended to May 15, 1978. Her position remained vacant during the course of the sick leave and her duties were assigned to the remaining Shop Booth Clerk and an employee serving as Expediter.[1] These employees were each able to discharge both their ordinary duties and Thompson's duties by working seven hours of overtime per week while the position remained unfilled.
 
 
 4
 During Thompson's absence, Viola Martini was the senior employee on the layoff list. Because she was not recalled during Thompson's absence, Martini filed a grievance which subsequently proceeded to arbitration. The arbitrator found for Martini and awarded her back pay for the period during which Thompson's position remained vacant.
 
 
 5
 The Company then filed an action in the district court to set aside the award on the ground that it did not draw its essence from the agreement. The district court granted the Company's motion for summary judgment and this appeal followed. The sole issue for our resolution is whether the district court exceeded its scope of review.
 
 II.
 
 6
 It has been well established since the Steelworkers Trilogy[2] that the role of courts in reviewing arbitration awards is extremely limited. The court emphasized in United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), that "(t)he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." This policy of judicial deference to an arbitrator's decision is to be followed "only so long as it draws its essence from the collective bargaining agreement." Id. at 597, 80 S.Ct. at 1361. Judge Aldisert, writing for this court in Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969), (emphasis added; footnote omitted), further articulated this precept:
 
 
 7
 (A) labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.
 
 
 8
 It is against these precepts that we must measure the district court's opinion.
 
 
 9
 The arbitrator's decision turns on the last sentence of Article 18 of the agreement which provides:
 
 
 10
 When in the opinion of the Company business requirements necessitate a recall of those employees laid off, all employees so laid off shall be recalled in accordance with their divisional seniority.
 
 
 11
 App., at 25a. The arbitrator interpreted this sentence to require recall of an employee if business remained the same during the leave of absence of an employee. Finding that production remained constant both prior to and while Thompson was on leave, the arbitrator concluded that business requirements would necessitate a continuation of the labor force at the same level in both these periods, and that Viola Martini, therefore, should have been recalled to fill the vacant position. The district court disagreed, concluding that the arbitrator in effect had amended the agreement and exceeded his authority. The court held that "(t)he arbitrator, by considering that business requirements necessitated recall, ignored the phrase 'in the opinion of the Company.' " App., at 96a.
 
 
 12
 The district court's holding exceeded the permissible scope of review because the arbitrator's award was not "totally unsupported by principles of contract construction." The arbitrator imposed a reasonableness requirement onto the Company's decision not to recall: "It would be unreasonable to expect that the vacancy would go unfilled under these sets of circumstances (same level of production and overtime required of other employees) unless there is some reason not to fill the vacancy." App., at 86a. The arbitrator therefore concluded that "since the business requirements remained much the same during Thompson's absence, the decision not to recall the grievant was an unreasonable exercise of managerial prerogatives." Id. at 87a-88a. This "reasonableness requirement" is not totally unsupported by principles of contract construction.[3]
 
 
 13
 Finally, we note that the effect of the district court's decision is to hold that the Company's opinion is final and absolute without any recourse by the Union through arbitration and without regard to whether or not the Company's opinion is reasonable. We do not believe the parties intended such a result. Article 6 of the collective bargaining agreement provides for arbitration of "(a)ll differences, disputes, (and) grievances. . . ." The district court's opinion modifies the agreement to the extent that the instant dispute concerning recall was held to fall outside Article 6's scope. The Company's decision is thus rendered unreviewable. Had the parties intended such a result, Article 6 could have been made subject to Article 18 or Article 18 could have been drafted to read "in the sole and exclusive opinion of the Company."
 
 III.
 
 14
 For the foregoing reasons, the judgment of the district court will be reversed.
 
 
 
 [1]
 The record does not indicate the nature of the duties of either a Shop Booth Clerk or of an Expediter
 
 
 [2]
 United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [3]
 See, e. g., Restatement of Contracts § 236 (1932), which provides:
 Where the meaning to be given to an agreement or to acts relating to the formation of an agreement remains uncertain after the application of the standards of interpretation stated in §§ 230, 233, with the aid of the rules stated in § 235, the following rules are applicable:
 (a) An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect.