AERONAUTICAL MACHINISTS LODGE
709, IAM&AW, AFL–CIO, Plaintiff,

v.

LOCKHEED–GEORGIA COMPANY,
division of Lockheed Aircraft
Corporation, Defendant.

Civ. A. No. C79–1085A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 11, 1981.

J. R. Goldthwaite, Jr., Adair & Goldthwaite, P. C., Atlanta, Ga., for plaintiff.

Duane C. Aldrich, R. Slaton Tuggle, III, Robert P. Barton, Kilpatrick & Cody, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

This action was commenced by plaintiff (the Union) to vacate an arbitration award. The award denied the Union's request that defendant (the Company) be required . to remove its bar to business representative R. P. Mason from any Lockheed controlled property. The Union argues that the Com-

pany's bar violated the following provision of their collective bargaining agreement:

> The President, Vice-President and *Business Representatives* of the Union *shall have access* to the Labor Relations Department Office for the purpose of contacting Labor Relations personnel and *shall have access* to the Departments of the Company's plant to which they are assigned for the sole purpose of contacting the Union Steward or Committeeman concerning employee complaints or grievances or matters arising out of the application of this Agreement. Such visits shall be subject to *such regulations* as may be made from time to time by the Company. *The Company shall not impose regulations which will render ineffective the purposes of this Section...*

(Emphasis added.) Collective Bargaining Agreement at Art. II, Sec. 2 [hereinafter cited as Agreement].

On June 30, 1980, this Court issued an Order remanding the case to the arbitrator for clarification or further findings on the issue of whether the Company's action, permanently barring Mr. Mason from its premises, rendered ineffective the purposes of the business representative provision and thereby violated the collective bargaining agreement. June 30, 1980 Order at p. 5. Therein, the Court stated, *inter alia*, the following:

> The issue which the parties presented to the arbitrator was whether the Company violated the collective bargaining agreement by permanently barring Mr. Mason from all Lockheed controlled property. The award and opinion indicate that the arbitrator's concern was whether the Company's bar against Mr. Mason's presence on its property was justified. The arbitrator appeared to conclude that if the action was justified it was not a violation of the agreement, and he found that a rule of reasonableness must be used to interpret and apply the provisions of the collective bargaining agreement. His final determination was that the Company's action "was justified by [Mr. Mason's] misconduct and did not violate the Agreement."

It appears to this Court that the arbitrator went beyond the issue submitted to him in making his determination. The issue which was before the arbitrator was not whether the Company was justified in barring Mr. Mason from its property ... If the arbitrator had found that the Company's action did render ineffective the purposes of that provision [Art. 2, Sec. 2], he would have been required to conclude that the Company violated the agreement according to its terms, no matter how justified he might have found that violation to be. The parties have agreed that the Company *shall not* render ineffective the purposes of the business representative provision. *See Communication Workers v. Western Electric, Inc., supra* [397 F.Supp. 1318 (N.D.Ga.1975), *aff'd,* 558 F.2d 816 (5th Cir. 1977) (per curiam).].

Defendant asked this Court to reconsider its Order of June 30, 1980 or, in the alternative, to grant it permission to appeal the Order pursuant to 28 U.S.C. § 1292(b). On October 15, 1980 the Court denied defendant's motion. The Court held that it was proper for it to examine whether the arbitrator went beyond the issue submitted to him, *citing Communications Workers v. Western Electric Co., Inc., supra.*

The arbitrator, on March 4, 1981, issued a supplemental opinion and award, as directed by this Court. The arbitrator concluded that

> Upon complete review of this matter, I hold that the Company's action barring Mason from access to Company property did not "render ineffective" the purposes of the provisions of Article II, Section 2 of the Agreement ... and that the bar to access to Company premises was not a regulation, "which will render ineffective the purpose of" Article II, Section 2.

Now the case is before the Court on the parties' cross-motions for summary judgment. This Court has jurisdiction under Section 301 of the Labor-Management Relations Act, as amended, 29 U.S.C. § 185, to entertain suits for the enforcement of arbitration awards.

■ The material facts are not in dispute. The parties agree the sole question is whether this Court should enforce the arbitrator's award. The role of this Court in reviewing arbitration awards is limited. The Court is not to review the merits of the award, including findings of fact and construction and application of the collective bargaining agreement. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (the Steelworkers Trilogy); *Western Electric, supra.* Otherwise, the policy of submitting disputes to arbitration would be frustrated.

■ However, the courts have fashioned a few exceptions to the finality of arbitration awards. In *Enterprise Wheel, supra,* the Supreme Court stated that the arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. at 597, 80 S.Ct. at 1361. Thus, a court may consider whether, as this Court did in its Order of June 30, 1980, an arbitrator has exceeded the authority conferred upon him by a collective bargaining agreement. *Western Electric, supra.* In the case at bar, the parties' collective bargaining agreement provides, *inter alia,* that "[t]he arbitrator shall not have the authority to amend or modify [the agreement] or to establish new terms and conditions ... " Agreement at Art. III, Sec. 5.

■ On remand, the arbitrator found the Company's bar of Mr. Mason not to have rendered ineffective the purpose of Art. II, Sec. 2 because other business representatives continued to have access to the Company's premises. However, this holding is premised on his earlier determination that the Company did not violate Art. II, Sec. 2 because it was justified in "rescind[ing] the right to access as it applied to Mason ... " Supplemental Award at p. 5. This analysis is in direct contravention of this Court's earlier ruling that "[t]he issue which was before the arbitrator was not whether the Company was justified in barring Mr. Mason from its property." In other words, the arbitrator should have considered whether Art. II, Sec. 2 gives the Company the right to bar access to its premises to a business representative, without regard to the arguments the Company might put forth to justify its action.

The Court recognizes the Company's legitimate interests in protecting its personnel from physical attacks and its operations from disruptive behavior. "However much this Court might sympathize with this feeling [, that the Company's action was justified,] the arbitrator 'does not sit to dispense his own brand of industrial justice.'" *Western Electric, supra,* at 1323. His authority was limited to deciding the issues submitted to him. Thus, in considering whether the Company was justified in its action he went beyond his authority and this Court has no choice but to refuse enforcement of the award. *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361; *Western Electric, supra,* at 1323.

The Court notes that Art. II, Sec. 2 gives the Company the authority to make rules to govern the right of access by Union personnel. Therefore, it cannot be said that the Company is left without a remedy. It can adopt regulations to protect its legitimate concerns by providing for lesser sanctions than a bar, thereby also safeguarding the Union's right of access. In this regard, the Court finds the arbitrator's holding that by barring Mr. Mason the Company did not regulate his right of access to the premises to be "without foundation in reason or fact." *Machinists District No. 145 v. Modern Air Transport, Inc.,* 495 F.2d 1241, 1244 (5th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974); *Boise Cascade v. United Steelworkers,* 588 F.2d 127 (5th Cir.), *cert. denied,* 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979). Common sense dictates that the withdrawal of the right of access is the ultimate regulation of access.

In *Boise Cascade, supra,* the Court held that an arbitrator can consider extrinsic evidence "to explain an agreement that may rationally be considered ambiguous." In that case the arbitrator made a finding that the agreement was ambiguous; thus, requiring extrinsic evidence such as the practices of the industry and the shop. *Id.* at 129–30. To the contrary, in this case, the arbitrator made no finding of ambiguity. Therefore, his duty was to interpret the express language of Art. II, Sec. 2, which states that "*[b]usiness [r]epresentatives ... shall have access* to the" Company's premises, without reliance on extraneous evidence.

Notwithstanding the clear contractual language, the arbitrator held that Mr. Mason "breached the *implicit* obligation for proper conduct, upon which the right of access ... is contingent ..." Supplemental Award at p. 4. To make this finding, the arbitrator impermissibly added terms which the parties did not place in the contract. Defendant argues this departure by the arbitrator from the plain terms of the contract is the classic "law of the shop" contractual analysis. However, that argument fails where there has been no finding of ambiguous language on the part of the arbitrator. Furthermore, assuming that evidence of prior custom and practice between the parties was admissible, the record shows a stormy relationship and excessive conduct by representatives of both parties, which had been tolerated (albeit with many mutual protestations) by the parties for many years. *See* Transcript of Arbitration Proceeding, Vol. II, at pp. 100–102.

In conclusion, even if the arbitrator were allowed to consider extraneous evidence, the custom and practice of the plant and the law of the shop did not show a regular practice of ousting business representatives from the premises for excessive behavior. To the contrary, it showed toleration and even condonation of excessive behavior by both parties over the years.

Contrary to defendant's arguments, this case is distinguishable from *United Food & Commercial Workers International, AFL–CIO, Local Union No. 634 v. Gold Star Sausage Co.,* 487 F.Supp. 596 (D.Colo.1980); *Johnson Bronze Co. v. International Union of United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO,* 621 F.2d 81 (3d Cir. 1980); and *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781,* 629 F.2d 1204 (7th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981).

In *Gold Star Sausage, supra,* the Court affirmed the arbitrator's determination that a "just-cause" clause, for the discharge of an employee, could be implied in the parties' collective bargaining agreement. 487 F.Supp. at 599. However, in so doing, the Court stated that there was no direct reference in the agreement to the Company's power to discharge with or without just cause. *Id.* In light of this, and other limitations on the Company's right to discharge, the Court held it was possible to infer that the parties contemplated that any discharge would be for cause. *Id.* In the case at bar, the language in Art. II, Sec. 2 makes it clear business representatives shall have access and that any regulations are not to defeat this right of access. Given the absence of any regulations, prior to this action, the arbitrator could not *ex post facto* imply such a regulation which clearly defeats the right of access. A proper regulation might provide for a lesser sanction than a total bar of Mr. Mason in this case.

In *Johnson Bronze, supra,* the Court found it proper for the arbitrator to impose a reasonableness requirement on the Company's decision to recall laid off employees, when the agreement provided that "[w]hen in the opinion of the Company business requirements necessitate a recall of those employees laid off ..." they shall be recalled. 621 F.2d at 82. The Court reasoned that to hold otherwise would be to render the Company's opinion "final and absolute without any recourse by the Union through arbitration and without regard to whether or not the Company's opinion is reasonable." *Id.* at 83. The Court felt this was not the intent of the parties. In the present case, as already discussed, to allow the Company to bar a business representative's access to its premises would patently defeat

the clear intent of the parties, as expressed in Art. II, Sec. 2.

Finally, in *Woolworth* the Court found it proper for the arbitrator, when confronted with contractual provisions somewhat contradictory, to interpret them and resolve the ambiguity with the aid of extraneous evidence. *Id.* at 1216. This ruling is consistent with *Boise Cascade, supra,* where, unlike here, the arbitrator did find ambiguities requiring him to go beyond the language of the agreement.

In summary, for the reasons set forth herein, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment. The arbitrator's award is VACATED.[1]

---

1. Given that this case arises out of an incident, in April 29, 1977, where Mr. Mason struck a Company representative in the stomach with his left elbow when the representative walked behind Mr. Mason, the Court is of the opinion that this matter should have been resolved long ago in an informal setting. The parties failure to do so has resulted in over four years of litigation, before the arbitrator and this Court, with the accompanying delay and expense to everyone concerned.