647 F.2d 605
 107 L.R.R.M. (BNA) 2855
 NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN, MESSENGERS AND
GROUP LEADERS DIVISION OF the LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA,
AFL-CIO, Plaintiffs-Appellees,
v.
UNITED STATES POSTAL SERVICE, Defendant-Appellant.
 No. 80-1141.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 June 12, 1981.
 Kenneth J. Mighell, U. S. Atty., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., John C. Oldenburg, Thomas H. Pigford, U. S. Postal Service, Memphis, Tenn., for defendant-appellant.
 Wilson, Menaker & Branson, Marvin Menaker, Les Weisbrod, Attys., Dallas, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before COLEMAN, GARZA and SAM D. JOHNSON, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 In 1978 the United States Postal Service sought to dismiss a postal handler named Londell W. Saulsbury. In justification it cited warnings to Saulsbury for tardiness, and for a series of injuries which he had suffered over a period of 8 years, which the Service said rendered him accident prone. The dismissal was challenged by Saulsbury and his union, the National Post Office Mail Handlers, et al., of the Laborer's International Union of North America, AFL-CIO (henceforth The Union). Eventually the case went to arbitration.[1]
 
 
 2
 Arbitrator A. Howard Myers decided May 9, 1978, that the dismissal was justified but that immediate dismissal was not appropriate. The arbitrator ruled that the Postal Service should put Saulsbury on indefinite suspension and give him 90 days in which to demonstrate whether he was sufficiently disabled by his latest accident to qualify for a light duty job under Section XIII[2] of the Union contract. Asked to clarify this award Arbitrator Myers stated that the 90 day period would begin to run June 6, 1978. If Saulsbury failed to qualify for a light duty job in that period the suspension would be converted to a dismissal on the date he failed to qualify.
 
 
 3
 On June 13, 1978, a week after the 90 day period began Saulsbury submitted to the Postal Service a request not for a light duty job but rather for reinstatement to his mail handler position. In a handwritten note witnessed by his union representative Saulsbury stated he could perform the job without any significant restrictions.[3] The Postal Service swiftly responded. On June 15 Saulsbury was notified that his request was being treated as if it was a request for a light duty job but since he had stated that he was not disabled he did not qualify for a light duty job. On June 19, 1978, the Postal Service notified Saulsbury that his suspension had become a termination.
 
 
 4
 Realizing the error of his June 13 letter Saulsbury submitted a second application to the Postal Service, dated June 28, 1978. In this application he asked for any light duty job consistent with Arbitrator Myers' award. This application was typed on union stationery and was witnessed by the President of the Union's local. Although this application was filed well within the 90 day period specified by the arbitrator's award the Postal Service refused it, saying that Saulsbury had failed to qualify for a light duty assignment in his June 13 application and according to its interpretation of the arbitrator's award was no longer an employee.
 
 
 5
 In order to qualify for a permanent light duty reassignment under Article XIII(B)(2) of the union contract, Saulsbury had to be examined by Public Health Service doctors or a doctor approved by the Postal Service. Since the Postal Service refused to consider his application in June 1978, this was not possible. In order to qualify for a temporary reassignment Saulsbury could have submitted a statement from his own doctor. The Postal Service would then have the option of sending him to a doctor of their choice. There is no evidence that Saulsbury submitted a statement from his own doctor along with his June 28, 1978, application. The Postal Service did not send him to a doctor of their choice at the time.
 
 
 6
 The Union filed suit in District Court alleging that the Postal Service had not abided by the terms of the arbitrator's award. When the suit came to trial in the fall of 1979, Postal Service doctors examined Saulsbury for the first time and found that he was not disabled at that time. The District Court found that the Postal Service had violated the Arbitrator's award by dismissing Saulsbury without considering his June 28, 1978, application for a light duty assignment. While denying the Union's request for attorney's fees, it remanded the case to the arbitrator with instructions to (1) assign Saulsbury either a light duty job or the mail handler position, and (2) to utilize one of several suggested standards to determine what back pay Saulsbury was entitled to receive.
 
 
 7
 The Postal Service has appealed the District Court's decision, contending that it goes beyond the arbitrator's award. While the appeal was pending before this court the Arbitrator acted upon the District Court's instructions. In a statement issued May 27, 1980, Arbitrator Myers said that in his initial award he " did not contemplate damages or reinstatement to a regular mail handler's position" as a remedy for Saulsbury. However, because of the District Court's instructions and because Saulsbury was not disabled the only option he found was to reinstate him to the mail handler's position and grant him back pay.
 
 
 8
 The arbitration process is a "system of private law"[4] by which parties get a swift and final resolution to disputes arising in their business relationships. Using arbitration they avoid the delays and expenses unavoidably involved if the dispute is taken to court. In order to encourage arbitration arrangement, courts generally defer to the judgment of the arbitrator and give the arbitration process "full play." United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960). Where circumstances after an arbitration award make judicial intervention inevitable, courts attempt to make this intervention limited, in order not to usurp the vital role of an arbitrator in interpreting the union contract and in maintaining industrial harmony. See International Association of Machinists and Aerospace Workers, District No. 145 v. Modern Air Transport, Inc., 495 F.2d 1241, 1245 (5th Cir. 1974), cert. denied 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974).
 
 
 9
 The Union brought this suit alleging that the Postal Service was refusing to live by the terms of the arbitrator's award. The District Court found that Saulsbury's application for reinstatement to his mail handler's position was not a request for light duty assignment and, therefore, did not relieve the Postal Service of its obligation under the Arbitrator's award to consider a subsequent application by Saulsbury for light duty reassignment as long as the second application was filed in a timely manner. We do not find this interpretation of the arbitration award to be erroneous.
 
 
 10
 We cannot, however, agree with the District Court's remedy. The arbitration award stated "just cause existed for suspension but not for removal of Londell W. Saulsbury. He shall remain on the roll without pay for ninety days to allow reassignment request to be filed." (Emphasis added). In his June 6, 1978, clarification statement the Arbitrator said "a 90 day period to commence with the date of the award has the purpose of allowing opportunity to exercise any rights under Article XIII " (emphasis added).
 
 
 11
 A reading of the Arbitrator's language demonstrated clearly that he made no judgment whether Saulsbury would actually qualify under Article XIII if given the chance. The award did not guarantee Saulsbury a light duty job, only a 90 day reprieve from dismissal in which he had the opportunity to demonstrate whether he qualified under Article XIII. By instructing the arbitrator to grant Saulsbury either a light duty job or his old mail handler position, the District Court warped the arbitration award and intruded upon the province of the arbitrator.
 
 
 12
 Although Saulsbury applied for a light duty job in June 1978, the Postal Department did not have its approved doctors examine him until October 1979. These doctors determined only that Saulsbury did not qualify for a light duty job in late 1979. The record does not answer two questions essential for determining if Saulsbury is entitled to a remedy: (1) Could he have established a temporary disability in summer 1978 had Postal Service doctors examined him then? and (2) If it is impossible to answer this question, what remedy, if any, would Saulsbury be entitled to receive.
 
 
 13
 We are not now in position to state the answer to these questions. They clearly lie within the unique competence of the arbitrator, involving interpretation of Article XIII of the union contract and the arbitrator's 1978 award.
 
 
 14
 The union argues that we should dismiss this appeal because it is not from a final judgment. Although the District Court did not label its December 10, 1979, order "Final Judgment" this appeal has basis in 28 U.S.C. § 1291 and 28 U.S.C. § 1292(b). Accordingly, we find no merit in the union's argument.
 
 
 15
 The District Court's December 10, 1979 order to the Arbitrator instructing him to place Saulsbury either in a light duty job or in the mail handler job and ordering computation of back pay for him is reversed.
 
 
 16
 The case is remanded to the District Court with instructions to return it to the Arbitrator to determine if Saulsbury would have qualified for a light duty job in June 1978, and what remedy, if any, he may be entitled to receive.
 
 
 17
 REVERSED and REMANDED, with instructions.
 
 
 
 [1]
 The relevant contract is between United States Postal Service and American Postal Workers Union, AFL-CIO, National Association of Letter Carriers, AFL-CIO, National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union of North America, AFL-CIO, and National Rural Letter Carriers' Association. It covers the period July 21, 1975, to July 20, 1979. The applicable section is Article XV, titled GRIEVANCE-ARBITRATION PROCEDURE
 
 
 [2]
 Article XIII, titled ASSIGNMENT OF ILL OR INJURED REGULAR WORK FORCE EMPLOYEES, Section B covers temporary or permanent reassignments to light duty at the employee's request
 
 
 [3]
 Saulsbury said his only disability was his need to wear eye glasses
 
 
 [4]
 United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)